# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

ANDREA WOODWARD, individually )
and as next friend and wife of JEFFERY )
WOODWARD, deceased, and )
SANDRA RUTTER, )
            )
     Plaintiffs, )
            )
v. )
            )
THE CITY OF GALLATIN, )
TENNESSEE, GALLATIN POLICE )
DEPARTMENT, JOHN DOES 1-10, and )
TASER, INTERNATIONAL, INC., )
            )
     Defendants. )

FILED
2:40 PM
OCT 26 2010
MAHAILIAH HUGHES, CLERK
BY_____ AB D.C

Docket No. 83CCV-2010-CV-1353
JURY DEMAND

EXHIBIT
1
to notice of removal

## COMPLAINT

Come now the Plaintiffs, Andrea Woodward, individually and as wife of Jeffery Woodward, deceased, and Sandra Rutter, and would show unto the Court the following:

1. This is a civil action against the Defendant, Taser International, Inc., for the wrongful death of Jeffery Woodward and involves claims of intentional and negligent concealment and fraud, negligence, strict liability, misrepresentation, breach of implied warranty, breach of express warranty and infliction of emotional distress in tort and arises out of an incident which occurred on or about October 27, 2009 in Gallatin, Sumner County, Tennessee. The specific details of the allegations against Taser, Inc. are set forth below.

2. This is also an action for money damages against the City of Gallatin, Gallatin Police Department, Sumner County, Tennessee, and Police Officers John and/or Jane Doe 1-10, individually and in their official capacities, for committing acts under the color of law and depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of

Tennessee as well as for battery, negligence, failure to train and educate, failure to warn, negligent infliction of emotional distress and other claims as set forth below.

3.    That this is also an action under the Tennessee Governmental Tort Liability Act (GTLA) Tenn. Code Ann. §29-20-101, et. seq.  Under said act, the City of Gallatin is liable for the negligent acts or omissions of employees under the GTLA and the doctrine of respondeat superior and other agency relationships.

## THE PARTIES

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-3 as if fully set forth herein.

4.    That the Plaintiff, Andrea Woodward, is the wife of Jeffery Woodward, deceased, and a resident and citizen of Nashville, Davidson County, Tennessee.  She is a person authorized to bring this suit pursuant to Tenn. Code Ann. §20-5-106, et. seq.

5.    That the Plaintiff, Sandra Rutter, is the natural mother of Jeffery Woodward and a resident and citizen of Gallatin, Sumner County, Tennessee.

6.    That the Defendant, Taser International, Inc., is a Delaware corporation headquartered in Arizona, which manufactures and sells electric stun guns to law enforcement agencies and others, including law enforcement agencies in the State of Tennessee.

7.    That the Defendant, City of Gallatin, Tennessee, is a political subdivision established under the laws of the State of Tennessee.  At all times alleged herein, public and law enforcement supervisory and policymaking officials employed by Defendant, City of Gallatin, Tennessee, engaged in unconstitutional acts under color of law which were directed to the Plaintiff and/or others similarly situated and resulted in the violation of decedent, Jeffrey Woodward's state and federal

2

rights.

8.     The Gallatin Police Department is an official subdivision of the city of Gallatin and all officers employed by said department are employees of the city. Policymaking officials employed by Defendant, Gallatin Police Department, engaged in unconstitutional acts under color or law which were directed to the Plaintiff and/or others similarly situated and resulted in the violation of the decedent, Jeffrey Woodward's state and federal rights.

9.     That the Defendants, John and/or Jane Doe 1-10, were, at all times pertinent to the Complaint, individuals acting under color of law in the course and scope of their employment as police officers employed by the City of Gallatin Police Department, and, while acting in that capacity, violated the state and federal rights of the decedent, Jeffrey Woodward. These Defendants are named John and/or Jane Doe Defendants herein because their true identifies have yet to be ascertained by the Plaintiff. Their true identities are known by the Defendants.

10.    That all of the Defendants are sued in their official and individual capacities.

11.    That all of the Defendants committed the unconstitutional acts herein complained of while acting under color of state law.

## FACTS

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-11 as if fully set forth herein. Plaintiffs would state that further discovery is needed to fully develop the facts pertaining to this case. The following facts are based upon eyewitness statements. Upon information and belief, Plaintiffs submit the following facts:

12.    On or about October 27, 2009, Jeffery Woodward called the police to report a home invasion and that his mother was in danger.

3

13. Jeffrey Woodward was under the impression that someone had kidnapped his mother.

14. That, en route to the call, police officers spotted Mr. Woodward walking down the street with a knife.

15. An officer asked Mr. Woodward to surrender the knife and he did so immediately.

16. Officers then cuffed Mr. Woodward and placed him in the back seat of their patrol car and drove to his mother's house.

17. Upon arrival, officers discovered Mr. Woodward's mother safe at home.

18. Upon information and belief, Mr. Woodward was charged with filing a false police report.

19. That, although Mr. Woodard was already in custody and cuffed in the back of the patrol car, officers took him out of the patrol car.

20. At some point, Mr. Woodward became agitated.

21. Despite the fact that Mr. Woodward was already in handcuffs and in the control of police officers, they released a police canine upon him.

22. While on the ground with a police canine on top of him, officers subjected him to multiple Taser applications.

23. Eyewitnesses report that during this time, Mr. Woodward was crying out, "Help me! Help me!" and that his mother was pleading with officers not to kill her son.

24. That the gratuitous use of force by the Defendant officers against the decedent was unnecessary and resulted in severe injuries and death.

25. At all times pertinent to this complaint, Defendant officers were acting in the course and scope of their duties and were acting under color of law.

4

## Count I – 42 U.S.C. §1983 – Excessive Use of Force

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-25 as if fully set forth herein.

26.    The use of a police canine and Taser and other wrongful acts conducted against the decedent, Jeffery Woodward, by the Defendants including, but not limited to, Defendant officers, constituted unreasonable and excessive force by a police officer.   Such actions were reckless, unlawful, unreasonable and unauthorized, as the Defendant officers had a duty not to subject the decedent to vicious and fatal police actions, and breached that duty.

27.    As a direct and proximate consequence of the Defendants' intentional wrongful actions and negligent behavior in violation of state and federal laws, Plaintiffs' decedent was deprived of his freedom and life, was seriously physically injured, and was subjected to a great fear and terror and suffered great physical pain and impairment, mental and emotional distress and death as a result of the aforesaid unlawful conduct of Defendant Officers.

## Count II – 42 U.S.C. §1983 – Fourteenth Amendment and Other Laws

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-27 as if fully set forth herein.

28.    That the Defendants, acting under color of state law, both collectively and individually, have engaged in actions and abuses which have deprived Plaintiffs' decedent, Jeffery Woodward, of rights, privileges and immunities secured by the United States Constitution including, but not limited to, rights secured by the due process and equal protection under the Fourteenth Amendment and other laws in violation of 42 U.S.C. §1983.

29.    In derogation of their duty, the Defendant officers failed to follow established and

5

widely recognized law enforcement policies and procedures with respect to the handling of persons in the same or similar circumstances of Jeffery Woodward and/or Defendants, Gallatin and Sumner County, failed to develop and implement adequate policies to establish appropriate handling by its police officers of persons in the same or similar circumstances as Jeffery Woodward.

30.     That the Defendant, Gallatin Police Department, failed to adequately train police officers to take suspects into custody during a Taser application and/or Defendant officers failed to follow that training.

31.     The actions of the Defendants deprived Mr. Woodward of his liberty interest in receiving prompt medical attention for his serious medical needs, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

32.     That, as a direct and proximate result of said acts, decedent, Jeffery Woodward sustained serious injuries, death and other damages as set forth below.

### Count III - 42 U.S.C. §1983 - Municipal Violations

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-32 as if fully set forth herein.

33.     That the Defendant, Gallatin Police Department, has permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal uses of force, beatings, and use of weapons against civilians by police officers. Although such beatings, illegal uses of force, and use of weapons were improper, the officers involved were not seriously prosecuted, disciplined or subjected to restraint and such instances were, in fact, covered up with official claims that the beatings, uses of force, and uses of weapons were justified and proper. As a result, police officers were caused and encouraged to believe that civilian persons could be beaten or abused under circumstances not

6

requiring the use of excessive force and that such beatings would, in fact, be permitted by the city and county.

34. In addition to permitting a pattern and practice of improper beatings and abuses of civilian persons, the Gallatin Police Department failed to maintain a proper system for investigation of all incidents of unjustified beatings, shootings and excessive use of force by police officers.

35. Upon information and belief, specific systemic flaws in the review of force process include, but are not limited to, the following:

a. Preparing reports regarding investigations of beatings and shooting incidents, the use of Tasers, and other uses of force as routine point by point justifications of the actions of the police officers involved, regardless of whether such actions are justified;

b. Police officers investigating beatings, shootings, the use of Tasers and other uses of force have systematically failed to credit testimony by non-police officer witnesses, and uncritically rely upon reports by police officers involved in the incident;

c. Police officers investigating beatings, shootings and the use of Tasers have failed to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;

d. Supervisory police officers have issued public statements exonerating police officers for the use of unnecessary and excessive force, improper beatings, and/or the use of Tasers before the investigations of the incidents by the police department has been completed;

e. Reports of brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect, misleading or contradictory information;

7

36.    That the foregoing acts, omissions, systemic flaws, polices, and customs of the Defendants have caused police officers to believe that brutality, excessive force and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result being that officers are likely to use excessive force in situations where such force is neither necessary nor reasonable.

37.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, police, practices and customs of the Defendant, Gallatin Police Department, the Defendant officers unjustifiably subjected Jeffrey Woodward to unnecessary and gratuitous force in violation of his civil and constitutional rights.

38.    The Defendant, Gallatin Police Department, were reckless, negligent, and deliberately indifferent in their training, hiring and supervision of their police officers, including the Defendant Officers with respect to the use of force against citizens of Gallatin, Sumner County and the recognition and preservation of the civil and constitutional rights and life of citizens of Sumner County.

39.    That the Defendant, Gallatin Police Department, promoted and enabled procedures permitting the types of actions taken by the Defendant Police Officers which resulted in the violation of Jeffery Woodward's constitutional and civil rights and physically harmed him. The Defendants failed to promulgate procedures and/or monitor and enforce compliance with established policies and procedures for the handling of persons in the same or similar circumstances of the decedent, which resulted in a violation of Jeffery Woodward's constitutional and civil rights, as well as physical harm to him.

40.    That, Gallatin Police Department knew or should have known that the training

8

officers received was inadequate and failed to take steps to see that they received additional and proper training regarding the use of Tasers and canines.

41. That, although the Gallatin Police Department knew or should have known that police officers in their department were routinely and consistently using Tasers inappropriately and when not warranted, they failed to take steps to remedy the situation.

42. That, as a direct result of the actions and failures of the Defendant, Gallatin Police Department, the Defendant Police Officers did not employ appropriate procedures to physically safeguard Jeffery Woodward, especially with respect to their preparation for and initial contact with him, attempts to contain him, attempts to take him into custody, failure to use protective devices, and to minimize the escalation of inappropriate physical force used against him.

### Count IV – Governmental Tort Liability Act (GTLA)

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-42 as if fully set forth herein.

43. That the Defendant, City of Gallatin, is a governmental entity within the meaning of the Governmental Tort Liability Act (GTLA), Tenn. Code Ann. §29-21-101, et. seq and is liable for the negligent acts and omissions of employees under the GTLA and the doctrine of respondeat superior and other agency relationships.

44. That, at all times pertinent to this action, the Defendant Police Officers and other employees of the City of Gallatin were acting within the course and scope of their employment.

45. That, without limiting the general allegations of negligence, the Defendant Police Officers were negligent as follows:

a. Using force that was excessive and unjustified under the conditions and circumstances

9

then and there present; and,

     b.     Failing to follow established policies and procedures relating to the use of force.

46.     That, without limiting the general allegations of negligence, the Defendant, Gallatin Police Department was negligent as follows:

     a.     Failing to properly train and supervise officers in the use of force and in the use of Tasers; and,

     b.     Failing to establish appropriate policies and procedures regarding the use of force and the use of Tasers.

     c.     Failed to properly train officers in how to take a suspect into custody during a Taser application.

47.     That it was foreseeable that a person such as Jeffery Woodward would sustain serious personal injuries and/or death as a result of the above acts of negligence.

48.     That these negligent acts show a conscious disregard for the health and welfare of the citizens of Gallatin, Sumner County, Tennessee.

49.     That, as a direct and proximate result of the above acts of negligence, Jeffery Woodward sustained serious injuries and death and further damages as set forth below.

## Count V – Battery

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-49 as if fully set forth herein.

50.     That the deliberate and intentional acts and omissions of the Defendant Police Officers, acting in their individual and official capacities, as set forth above, give rise to a cause of action under the common law of Tennessee for battery and that all Defendants are jointly liable for

10

such actions.

51.     That, as a direct and proximate result of the intentional acts of these Defendants, Jeffery Woodward sustained serious injuries, death and other damages as set forth below.

**CAUSES OF ACTION**
**AGAINST THE DEFENDANT,**
**TASER INTERNATIONAL, INC.**

**Count XI -- Products Liability -- Intentional and Negligent Concealment and Fraud**

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-51 as if fully set forth herein.

52.     Plaintiffs are informed and believe and thereon allege that the Gallatin Police Department and its officers were trained in the use of TASER ECDs by compact disc media, oral and written instruction, training, warnings, and other methods provided directly or indirectly to by defendant TASER.

53.     Prior to October 27, 2009, plaintiffs are informed and believe and thereon allege that Defendant, TASER, misrepresented, failed to disclose and/or failed to warn the Gallatin Police Department and its ECD-armed officers of the following material facts, among others:

a.     Falsely represented that its ECDs are not lethal; (See, e.g., Version 12 and 13 TASER Training Materials);

b.     Falsely represented that the ECDs cannot cause cardiac arrest; (See, e.g. Version 12 and 13 TASER Training Materials);

c.     Falsely represented that its ECDs cannot cause ventricular fibrillation; (See, e.g., Version 12 and 13 TASER Training Materials);

d.     Falsely represented that a TASER ECD can be safely fired at the front center of a

11

suspect's body mass; (See, e.g., Version 12 and 13 TASER Training Materials);

e.     Falsely represented that "after initially deploying the TASER X26 upon the suspect a law enforcement officer should be prepared to deliver additional cycles." (See, e.g., Version 12 and 13 TASER Training Materials);

f.     Falsely represented that multiple ECD discharges into a human being presents no greater health risk than a single discharge;

g.     Falsely represented that a TASER ECD may be safely used on suspects under the influence of mind altering drugs (See, e.g., Version 13 TASER X26 Certification Test);

h.     Failed to disclose and/or warn that a TASER ECD is a potentially lethal device which can cause cardiac arrest;

i.     Failed to disclose and/or warn that the risk of cardiac arrest is significantly increased by discharging an ECD in the front chest, near the heart, and that law enforcement including the Gallatin Police Department should endeavor to deploy the ECDs to parts of a suspect's body other than the front of the chest to minimize or eliminate the risk of cardiac arrest and death;

j.     Failed to disclose and/or warn that the Gallatin Police Department and other law enforcement agencies should carry defibrillators in their police vehicles if personnel are armed with ECDs in order to further minimize the risk of death in the event cardiac arrest occurs from ECD use;

k.     Failed to disclose and/or warn that multiple cycles and uses of ECDs on a single person increase the risk of cardiac arrest and death, which Decedent Woodward suffered;

l.     Falsely represented in Instructor notes to the slide on "the decision to deploy" that "When used within the design parameters of the device, the TASER is a very effective, non-lethal, control device," when it is in fact potentially lethal. (See, e.g. Version 12 Training Manual, issued

12

January, 2005.)

m.     Falsely represented that "There is no medical evidence that the TASER T-Waves™ in any way causes or contribute to heart or respiratory failure." (See, e.g. Version 12 Training Manual, issued January, 2005.)

n.     Falsely represented, concealed and failed to warn that "TASER applications directly across the chest may cause sufficient muscle contractions to impair normal breathing patterns. While this is not a significant concern for short (5 sec) exposure, it may be a more relevant concern for extended duration applications. Accordingly, prolonged applications should be avoided where practicable." There is no mention of the risk of cardiac arrest, which increases with prolonged exposure and is much more life threatening than temporary impairment or respiration. (See, e.g. Version 12 Training Manual, issued January, 2005.)

o.     TASER falsely trains that officers should "Keep cycle going until suspect restrained," despite the risk of inducing cardiac arrest if the probes are deployed across the chest. (See, e.g. Version 12 Training Manual, issued January, 2005.)

p.     In TASER's Medical Safety Slide Training Version 12 TASER falsely represented that:

• The ADVANCED TASER M26 was applied directly to the chest of experimental animals without causing heart failure during tests at the University of Missouri;

• Using "worst case" scenarios, cardiac safety experts found no induction by the M26 weapon of abnormal heart rhythms;

• No arrhythmia provocation occurred even when the animals were given the

13

stimulant drugs epinephrine and isoprotemol, agents that make the heart more susceptible to electrical stimulation; "there are no lasting after-effects from the electrical current itself." (Instructor notes to slide on "Possible TASER side effects"); and

- "Extensive animal testing has shown effect on heart rhythms or blood pressure to be insignificant." (TASER Technology Medical Safety Slide).

q.    In the Version 12 Lesson plan, page 91 (dated 11/04) Defendant TASER falsely misrepresented that: "Unlike aerosol chemical agents, the entire body is effective target zone," and there is no mention of increase cardiac arrest risk from strikes to the chest; and then again at page 92, in connection with on incident, Defendant TASER points out that an officer "Aimed at open front of unzipped jacket."

54.    That, upon information and belief, the Gallatin Police Department's officer at the scene of this incident discharged a TASER Model X26 ECD into decedent Woodward multiple times. Paramedics were called to the scene but were unable to revive the decedent and he died a short time later.

55.    Defendant TASER intentionally and negligently represented to the Gallatin Police Department and its officers all of the material statements set forth herein above, including those set forth in Paragraph 21, and many more of a similar nature.

56.    These representations were, in fact, false. Defendant TASER knew that the misrepresentations were false when they were made, and/or made the representations recklessly and without regard for their truth, or negligently.

57.    Defendant TASER intended that law enforcement agencies such as the Gallatin Police

14

Department when purchasing its products that that individual officers such as the officer involved in this incident and DOES 1-10 rely on the misrepresentations when using its ECDs and, in fact, they did rely on these misrepresentations in purchasing, deploying, training, instructing, and otherwise using TASER manufactured ECDs as a law enforcement tool in interacting with members of the public such as Decedent Woodward.

58.     Defendant TASER intentionally and negligently failed to disclose to the Gallatin Police Department and other law enforcement agencies and to individual officers such as the officer involved in this incident material and important facts that were known only to defendant TASER and could not have been discovered by law enforcement agencies, all as described hereinabove.

59.     At all times herein mentioned, the Gallatin Police Department and its officers, such as the officer involved in this incident, were reliant upon defendant TASER for appropriate warnings, instructions, and for all necessary medical and scientific information concerning the safety of TASER ECDs so that Gallatin Police Department's officers could be properly trained and instructed in the use of such ECDs.

60.     The Gallatin Police Department, its officers, and other law enforcement agencies and their officers did not know of the facts concealed by Defendant TASER.

61.     Defendant TASER intended to and did deceive the Gallatin Police Department, other law enforcement agencies, its users in law enforcement and corrections, and the general public, of the true facts concerning the safety of its ECDs in order to promote and sell ECDs, cartridges and accessories with artificial and inflated safety claims.

62.     The Gallatin Police Department and other law enforcement agencies reasonably relied on the deceptions of Defendant TASER.

15

63. As a direct and proximate result of the misrepresentations and concealment by defendant TASER, Jeffrey Woodward sustained damages in an amount to be awarded according to proof.

64. Plaintiffs are informed and believe and thereon allege that Defendant TASER acted in a despicable, malicious, oppressive and fraudulent manner, in conscious disregard of the rights and safety of the decedent, entitling plaintiff to punitive damages.

### Count VI - Negligence

Plaintiff reaffirms each and every allegation contained in paragraphs 1-64 as if fully set forth herein.

65. The Defendant, Taser International, Inc., was negligent in designing, manufacturing, testing, inspecting, distributing and/or selling the Taser stun gun to law enforcement personnel and agencies in general and specifically to the other Defendants in this case.

66. The Defendant, Taser International, Inc., was further negligent in that they knew that their product was unreasonably dangerous and defective and failed to adequately warn the ultimate users of the stun guns and the general public of the dangers associated with this weapon.

67. That the Defendant, Taser International, Inc., was further negligent in the way that they advertised and promoted the stun guns. Specifically, the Defendant, Taser International, Inc., has made numerous false and misleading claims about the safety of the potential dangers associated with its weapons.

68. That these statements were made despite the fact that Taser International, Inc. knew or should have known that they were false and/or misleading and created a false perception regarding the dangers of using Tasers by law enforcement personnel throughout the country, including the

16

Defendants in this case.

69.    That these statements show an intentional and conscious disregard for the true dangers associated with the product and were intended to place profits over lives.

70.    That the actions of Taser International, Inc. Were intentional, reckless and/or fraudulent.

71.    That as a direct and proximate result of the above acts of negligence, Jeffrey Woodward sustained serious injuries, death and other damages as set forth below.

## Count VII - Strict Liability

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-71 as if fully set forth herein.

72.    That the Defendant, Taser International, Inc., is engaged in the business of selling, developing, assembling and marketing energy weapons, primarily for use in the law enforcement, corrections, private security and personal defense market.

73.    That the product/weapon utilized on the Plaintiffs' decedent was in a defective and unreasonably dangerous condition when it left the Defendant, Taser International, Inc.

74.    That the Defendant, Taser International, Inc., was otherwise negligent and careless in failing to properly design, manufacture, test, promote, advertise, market and warn about the aforementioned products/weapons and was negligent and careless in the warning, design, testing, inspection, installation, assembly, construction, manufacture, distribution, labeling, sales, promotion, maintenance, service and/or repair of the Taser guns and all of the component parts, equipment, accessories and related products which were not safe for the intended purpose and were not free from design manufacture defects which failed to give adequate warnings, notice, educational information

17

and directions for safety and use and the Defendant, Taser International, Inc., was otherwise negligent and careless.

75.    That the Taser is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

76.    That the Taser, because of its dangerous condition and characteristics, would not be put on the market by a reasonably prudent manufacturer or seller under the same or similar circumstances.

77.    That, at the time of the occurrences set forth herein, the products were being used for the purpose and in the manner normally intended and reasonably could be expected to be used.

78.    That, as a direct and proximate result of the Defendant's conduct as set forth above, Jeffrey Woodward sustained serious personal injuries and death.

79.    That the Defendant, Taser International, Inc., is strictly liable to Plaintiffs for their actions.

### Count VIII - Misrepresentation

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-79 as if fully set forth herein.

80.    That, in furtherance of their profit-making pursuit, the Defendant, Taser International, Inc., engaged in an extensive advertising and promotional campaign for its weapons. This extensive campaign was pursued through video and print advertising, labels, brochures, promotional and instructional materials and verbal statements, all of which contained numerous misrepresentations of material fact concerning the character, quality and safety of the Taser weapons including, but not

18

limited to, the following:

a. Said promotional and advertising materials demonstrate users operating Tasers in a reckless, dangerous and irresponsible manner;

b. Said advertising and promotional materials portray and suggest that users of a Taser can adopt a nonchalant attitude while using Tasers;

c. Said advertising and promotional materials were purposefully designed to create and did actually create the false impression that Tasers can be used safely on anyone at any time and that they are nonlethal when, in fact, the Tasers were unreasonably dangerous when used under normal circumstances in the manner portrayed in the various advertising and promotional materials;

81. That said advertising and promotional materials deliberately omitted any adequate warning or instruction regarding the true dangers of the weapons.

82. That the Defendant, Taser International, Inc., either knew or should have known that operation and use of Tasers in ways identical or similar to those portrayed in the materials disseminated during the course of the national advertising promotional campaign created an unreasonable and substantial risk of harm to users of the weapon and to the general public.

83. That, as a direct and proximate result of reliance of police officers on the misrepresentations of the Defendant, Taser International, Inc., Jeffrey Woodward sustained serious injuries, death and other damages as set forth below.

### Count IX - Breach of Implied Warranty

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-83 as if more fully set forth herein.

84. The Defendant, Taser International, Inc., its agents, servants and/or employees

19

represented and warranted expressly and impliedly to the Plaintiff and members of the general public that its Taser guns and all of the component parts, equipment, accessories and related products were safe, of merchantable quality and fit for the ordinary purposes for which the product was intended to be used.

85.     The Plaintiffs and/or members of the public relied upon the skill, knowledge, judgment, representations and warranties of the Defendant, Taser International, Inc., in the manufacture, inspection, testing, repair, design, distribution, labeling, promotion, advertising, education of, marketing and sell of the product.

86.     The representations and warranties were false, misleading and inaccurate in that the product, when put to the test of actual performance, proved to be dangerous, lethal, unsound and unsuitable for the purposes for which it was intended or reasonably could be expected to be used.

87.     That purchasers of the Taser ECD and the Plaintiff's decedent had no knowledge of the falsity of these representations and warranties.

88.     That, as a direct and proximate result of the breach of implied warranties by the Defendant, Taser International, Inc., Jeffrey Woodward sustained serious injuries, death and other damages as set forth below.

**Count X - Breach of Express Warranty**

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-88 as if fully set forth herein.

89.     That, upon information and belief, prior to the use of the Taser weapon on the decedent by members of the Gallatin Police Department, the Defendant, Taser International, Inc., in order to promote and induce the purchase of its product, expressly warranted by advertisement,

20

literature and other means that users, operators, subjects of the electrical charge of the Taser weapon, could safely use, operate and shock persons without harm or death for the specific use of safely apprehending suspects, which was in fact the purpose for which the product was intended.

90.     That the purchasers of the Taser ECD and Plaintiffs and Plaintiffs' decedent relied upon the skill, knowledge, judgment, representations and warranties of the Defendant, Taser International, Inc., as to the use of Defendant's product.

91.     That the representations were false, misleading and inaccurate and that the product utilized by the Gallatin Police Department, when put to the test of actual performance was, and proved to be, deadly, unsound, unsafe and unsuitable for the purposes for which it was intended and reasonably could be expected to be used.

92.     That the product was unsafe, dangerous, defective and not of merchantable quality.

93.     That, as a direct and proximate result of the breach of express warranties by the Defendant, Taser International, Inc., Jeffrey Woodward sustained serious injuries, death and other damages as set forth below.

### Count XII – Infliction of Emotional Distress

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-93 as if fully set forth herein.

94.     At the time of the aforesaid incident, plaintiff, Sandra Rutter, was present at the scene and within the immediate sensory perception of her son, Jeffrey Woodward, during and immediately after his altercation with a Gallatin Police Department officer, and was aware that the TASER discharges were causing injury to her son and ultimately his death.

95.     The aforesaid wrongful acts of defendants TASER and DOES 1-10 constitute

intentional and negligent conduct done with conscious disregard for the rights of the plaintiffs.

96.    As a proximate result of the intentional and negligent conduct of defendants TASER and DOES 1-10, plaintiff, Sandra Rutter, has suffered severe emotional and mental distress, having a traumatic effect on her emotional tranquility demands damages as set forth below.

97.    Plaintiffs are informed and believe and thereon allege that Defendants TASER and said DOE Defendants acted in a despicable, intentionally reckless, malicious, oppressive and fraudulent manner, in conscious disregard of the rights and safety of plaintiff, Sandra Rutter, to recover exemplary and punitive damages on his behalf against defendant TASER and DOES 1-10 in an amount to be awarded according to proof.

## DAMAGES

Plaintiffs reaffirm each and every allegation contained in Paragraphs 1-97 as if fully set forth herein.

98.    That, as a direct and proximate result of the above-stated actions of the Defendants, Jeffrey Woodward suffered serious personal injuries, severe mental anguish, pain and suffering, humiliation, loss of earning capacity and medical expenses.

99.    That, as a direct and proximate result of the above acts of the Defendants, Andrea Woodward lost the love, affection, companionship of her husband.

100.    That, as a direct and proximate result of the above acts of the Defendants, Sandra Rutther sustained serious emotional distress and loss of consortium of her son, Jeffrey Woodward.

WHEREFORE, Plaintiff, Andrea Woodward, demands judgment against the Defendants, in the amount of Five Million Dollars ($5,000,000.00) compensatory and Ten Million Dollars ($10,000,000.00) punitive damages and Plaintiff, Sandra Rutter, demands judgment in the amount

22

of One Million Dollars ($1,000,000.00) compensatory and Five Million Dollars ($5,000,000.00)

punitive damages. Plaintiffs further demand attorney fees and whatever further relief the Court

deems appropriate and further demand a jury of twelve to try all issues joined herein.

Respectfully submitted,

BEDNARZ & BEDNARZ

JOE BEDNARZ, JR., #18540
JOE BEDNARZ, SR., #9347
Suite 2100, Parkway Towers
404 James Robertson Parkway
Nashville, Tennessee 37219
(615) 256-0100

23