IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANDREA WOODWARD, ET AL.           )
                                  )
v.                                )     No. 3:10-cv-1060
                                  )     Magistrate Judge Bryant
CITY OF GALLATIN, TENNESSEE, ET AL. )

**MEMORANDUM**

Pending before the Court is the plaintiffs' motion for judicial review regarding taxable costs (Docket Entry No. 124), and the defendant's motion for attorney fees/costs and sanctions. (Docket Entry No. 119) For the reasons given below, and by Order entered contemporaneously herewith, these motions will be DENIED.

I. Taxable Costs

On November 19, 2013, summary judgment was granted to the City of Gallatin ("defendant") on all federal claims, and those claims were dismissed with prejudice; plaintiffs' supplemental state law claims were dismissed without prejudice to refiling in state court. (Docket Entry No. 112) After summary judgment was granted, the defendant submitted its Bill of Costs, which asked that the Clerk of Court tax the plaintiffs $17,899.89 for the allowable costs that the defendant accrued in defending itself and its agents in this case. (Docket Entry No. 115) The clerk taxed these costs against the plaintiffs on December 27, 2013. (Docket Entry No. 123) The plaintiffs subsequently filed a motion for judicial review regarding the costs taxed. (Docket Entry No. 124) The plaintiffs argue that the defendant is not a "prevailing party" under Fed. R. Civ. P. 54(d) and that the Court should use its discretion to decline to tax costs to the plaintiffs. (Docket Entry No. 125)

1

A. Prevailing Party

A prevailing party is one who succeeds on "any significant issue in [the] litigation." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791 (1989). A party who is granted summary judgment is a "prevailing party" under Fed. R. Civ. P. 54. Frye v. Baptist Mem'l Hosp., Inc., 863 F. Supp. 2d 701, 707 (W.D. Tenn. 2012), aff'd, 507 Fed. Appx. 506 (6th Cir. Dec. 4, 2012). The defendant was granted summary judgment on all of the plaintiffs' federal claims. (Docket Entry No. 112) Thus, the defendant succeeded on a "significant issue in the litigation" and is a prevailing party under Fed. R. Civ. P. 54. See Donahoo v. Ohio Dep't of Youth Servs., 5:01CV1137, 2002 WL 31685727 (N.D. Ohio Oct. 23, 2002) (awarding costs to defendant who was granted summary judgment on federal claims and had supplemental state law claims dismissed without prejudice); Head v. Medford, 62 F.3d 351 (11th Cir. 1995) (holding defendants were the "prevailing party" when they were granted summary judgment on federal claims even though the district court declined to exercise its supplemental jurisdiction and dismissed all of the plaintiff's remaining state law claims).

B. Discretion

Fed. R. Civ. P. 54 provides that costs – other than attorney fees – should be granted to the prevailing party unless "a federal statute, these rules, or a court order provides otherwise." The Sixth Circuit has concluded that the rule creates a presumption in favor of awarding costs, but allows a denial of costs at the discretion of the trial court. Knology v. Insight Communications Co. LP, 460 F.3d 722, 726 (6th Cir. 2006). Thus, the trial judge can deny costs when it would be inequitable in a particular case to put the burden of costs upon the losing party. Lichter Found., Inc. v. Welch, 269 F.2d 142, 146 (6th Cir. 1959). The Sixth Circuit has provided examples of such scenarios, including "where the amount of taxable costs actually expended

were unnecessary or unreasonably large under the circumstances, where the denial of costs was in the nature of a penalty for injecting unmeritorious issues into the case or unnecessarily prolonging the trial of the case, or where the judgment recovered was insignificant in comparison to the amount sought and actually amounted to a victory for the [opposing party]." Id.

The plaintiffs have not presented evidence of any of these circumstances, but argue that awarding costs in this case would have a chilling effect on future litigants in similar civil rights cases.[1] In this case, the possibility of a chilling effect is not significant enough to overcome the usual presumption of awarding costs to the prevailing party. See Frye v. Baptist Mem'l Hosp., Inc., 507 Fed. Appx. 506 (6th Cir. Dec. 4, 2012) (holding taxing costs in the amount of $55,401.63 against former employee plaintiff would not have an unwarranted chilling effect on future claims).

## II. Attorney Fees and Nontaxable Expenses

After summary judgment was granted, the defendant filed a motion for attorney fees/costs and sanctions (Docket Entry No. 119) along with a memorandum in support of the motion (Docket Entry No. 120) The defendant argues that the plaintiffs' counsel multiplied the proceedings both unreasonably and vexatiously and should be required by the Court to personally satisfy the excess costs, expenses, and attorney fees reasonably incurred because of this conduct. (Docket Entry No. 120) The defendant has requested that the Court award it $231,334.05 for the plaintiffs' allegedly groundless continued litigation of the municipal liability claims. In the alternative, the defendant has requested the lesser amount of $86,395.89 for the

---

[1] The Sixth Circuit has considered a "chilling effect" a relevant consideration along with all of the circumstances in the case in determining whether the award of costs is equitable. White & White, Inc. v. Am. Hosp. Supply Corp., 786 F.2d 728, 731 (6th Cir. 1986).

3

plaintiffs' allegedly groundless continued litigation of the TASER claims. Id. The plaintiffs filed a response to defendant's motion for attorney fees/costs and sanctions. (Docket Entry No. 130) The defendant subsequently was granted leave to file a reply to plaintiffs' response to defendant's motion for attorney fees/costs and sanctions. (Docket Entry No. 131)

A. Legal Standard for Sanctions

28 U.S.C. § 1927 provides that: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The defendant argues that plaintiffs' counsel continued to litigate claims after the plaintiffs had disclosed their Rule 26 expert witnesses and he knew, or should reasonably have known, that the claims against the defendant were groundless. (Docket Entry No. 120 at 5)

Although the plaintiffs failed to provide sufficient evidence to overcome summary judgment, this is not an appropriate case to award attorney fees or sanctions. Generally, both parties are responsible for their own attorneys' fees. Riddle v. Egensperger, 266 F.3d 542, 547 (6th Cir. 2001). The Sixth Circuit considers an award of attorneys' fees an extreme sanction that must be limited to "truly egregious" misconduct. Jones v. Cont'l Corp., 789 F.2d 1225, 1232 (6th Cir. 1986). Further, the Supreme Court stated:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success… Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

4

> ... Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421-22 (1978).

### B. Municipal Liability and TASER Claims

The defendant claims that the plaintiffs should have dismissed the municipal liability claims under 42 U.S.C. § 1983 and state law claims upon disclosure of law enforcement expert Ernest Burwell's Rule 26 Expert Report. (Docket Entry No. 120) In the alternative, the defendant claims the plaintiffs should have dismissed their TASER claims after the deposition of their medical expert, Dr. George Nichols. Id.

Municipalities cannot be held vicariously liable under § 1983 for the wrongdoing of their agents under the theory of *respondeat superior*. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Municipal liability pursuant to 42 U.S.C. § 1983 requires a plaintiff to show that an official policy or unofficial custom of the city actually caused the alleged constitutional harm. Id. Municipal policy producing § 1983 liability may arise from a failure to train or to supervise city police officers, but only when the failure evidences a "deliberate indifference" to the rights of individuals with whom the police come in contact with. City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 & n.8 (1989). In order to establish liability based on failure to train, the plaintiff must show the training program at issue is inadequate for the tasks the officers must perform; the inadequacy is a result of the city's deliberate indifference; and the inadequacy is the proximate cause of the plaintiff's injury. Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989) (citing Harris, 489 U.S. at 390-92).

The plaintiffs argued that the defendant did not provide adequate training to the police officers on interacting with individuals whose mental status was altered due to the effects of drug use, excited delirium, or other mental illness. (Docket Entry No. 111) However, essentially the only proof supporting this theory of inadequate training was the report by Mr. Burwell. Id. Mr. Burwell opined that the officers' actions in the case were indicative of a lack of training, but Mr. Burwell did not identify any deficiencies in the defendant's training materials as compared with what he would consider appropriate training materials. Id. Mr. Burwell's deposition indicated that he did not have a strong basis for his conclusion. (Docket Entry No. 75-5) Mr. Burwell had difficulty recalling important information from the materials he reviewed and did not review all of the relevant information in developing his opinion. Id. However, plaintiffs' counsel did provide Mr. Burwell approximately 3,260 pages of discovery material to review for the case. (Docket Entry No. 130) Further, Mr. Burwell told plaintiffs' attorney that he had reviewed all of the information. (Docket Entry No. 126-1) Plaintiffs' attorney concedes that Mr. Burwell's deposition could have been better, but he claims that there was nothing in the deposition that caused him to believe the case would not get to a jury.[2] Id. Mr. Burwell would have undoubtedly been cross examined vigorously and effectively if the case had made it to trial, but the Court does not find plaintiffs' attorney's reliance on Mr. Burwell's testimony as the evidentiary basis for continuing the litigation to be "egregious misconduct."

The plaintiffs have also claimed that the TASER applications contributed to the injuries suffered as a result of the § 1983 violation. The plaintiffs did not have an expert to prove that the TASER applications contributed to the death of Mr. Woodward. However, there was

---

[2] Indeed, there is Sixth Circuit authority that could have been read to endorse this belief, See Russo v. City of Cincinnati, 953 F. 2d 1036 (6th Cir. 1992), though this Court found Russo distinguishable from the instant case on a number of fronts. (Docket Entry No. 111 at 13-16)

6

sufficient evidence to prove that the TASER application caused harm to Mr. Woodward. There was evidence that the TASER was applied multiple times and there was physical evidence indicating that one of the probes did make contact with Mr. Woodward. There was also a video depicting Mr. Woodward being shot by the TASER and falling down screaming during the TASER application. The defendant has argued that it was frivolous for the plaintiffs to continue litigating claims with reference to the TASER applications after Dr. Nichols disclosed his expert report because Dr. Nichols did not opine that the TASER applications contributed to Mr. Woodward's death. However, the TASER applications did not have to cause or contribute to death in order for the plaintiffs to recover under § 1983.

The plaintiffs did not have enough evidence of municipal liability to get past summary judgment. However, the plaintiffs' pursuit of the case does not amount to "egregious misconduct." The plaintiffs' attorney swore that he did nothing to unreasonably or vexatiously multiply these proceedings or in any way cause an increase in the costs, expenses, or time necessary to litigate the case. (Docket Entry No. 126-1) Although the case resulted unfavorably for the plaintiffs, the defendant concedes that the allegations contained in the complaint were not frivolous when filed. However, defendant claims the plaintiffs continued to litigate after the claims became frivolous and unreasonable. Although the plaintiffs did not provide sufficient evidence to overcome summary judgment, the Court finds that the claims at issue did not become frivolous or unreasonably maintained by virtue of this evidentiary shortcoming.

III. Conclusion

For the reasons discussed herein, the plaintiffs' motion for judicial review regarding taxable costs (Docket Entry No. 124) will be DENIED and the $17,899.89 award of

costs entered by the clerk AFFIRMED. The defendant's motion for attorney fees/costs and sanctions (Docket Entry No. 119) will be DENIED.

An appropriate order will enter.

**ENTERED** this 13th day of June, 2014.

s/ John S. Bryant  
JOHN S. BRYANT  
UNITED STATES MAGISTRATE JUDGE